UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACQUELYN GILES, Individually and as Special Administrator of the Estate of Jeff L. Giles, Deceased,<br><br>        Plaintiff,<br><br>        v.<br><br>WYETH INC, a Delaware Corporation and its wholly-owned subsidiary, WYETH PHARMACEUTICALS, formerly known as AMERICAN HOME PRODUCTS CORPORATION,<br><br>        Defendants. | Case No. 04-cv-4245-JPG |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

**I.    Introduction**

On October 30, 2002, Jeff Giles (Jeff) drove to a rural road, stopped his car, and shot himself in the heart with his shotgun. Two days earlier, Jeff had started taking Wyeth's antidepressant drug, Effexor. Jacquelyn Giles (Giles), Jeff's widow, contends that Effexor caused her husband to commit suicide.

In her complaint, Giles alleges that Jeff was a member of a "small vulnerable subpopulation" in whom Effexor and other selective serotonin reuptake inhibitors (SSRIs) and selective seratonin norepinephrine reuptake inhibitors (SNRIs) increase the risk for violence and suicide. Giles brings this action against Wyeth[1], the manufacturer of Effexor, alleging that it has known about this small vulnerable subpopulation for years, but "has failed to conduct any

---

[1] Giles sued both Wyeth, Inc. and Wyeth Pharmaceuticals. For the sake of simplicity, the Court will refer to the defendants collectively as Wyeth.

prospective tests to determine the frequency of this phenomenon or to develop means of identifying, screening, and protecting those patients who are in this risk group." (Sec. Amend. Compl. at 3). Giles argues that Wyeth should have warned doctors, pharmacists, and patients about this risk.

Giles alleges Wyeth has "utilized material misrepresentations to promote and market Effexor, *inter alia* via the practice of 'ghost writing' scientific articles for publication under the names of prominent academic 'authors' and by making false and misleading statements regarding the efficacy and superiority of Effexor, viz. a viz. its competitors." (Sec. Amend. Comp. at 3). She has set forth three, alternative theories of liability under Illinois law. First, she claims Wyeth is strictly liable for marketing defects and misrepresentations. Second, she states a claim for negligence predicated on Wyeth's "failure to warn, failure to test, failure to implement appropriate patient screening mechanisms, negligent misrepresentations, and over-promotion of Effexor." (Sec. Amend. Compl. at 5). Finally, Giles claims Wyeth is liable for breach of express and implied warranties.

Wyeth has filed a motion for partial summary judgment on Giles's failure to warn and breach of express warranty claims (Doc. 86). Giles has responded to Wyeth's motion (Doc. 103) and Wyeth has replied to her response (Doc. 107).

**II.     Background**

In 1995, Jeff was injured when a rock fell on his head while he was working in a coal mine. Though the injury caused him substantial pain, he continued to work after the injury. By 2002, however, the pain was too much, so, Jeff had surgery that September. The surgery was successful and Jeff's prognosis good.

Jeff went to his doctor, Dr. Pramote Anantachai (Dr. Pramote), on October 28, 2002,

complaining that he was tired, unmotivated, and depressed. Dr. Pramote concluded that Jeff had depression and prescribed Effexor. Dr. Pramote did not record – and does not really remember – what he told Jeff about Effexor, but he tells all patients to whom he prescribes antidepressants standard things. Dr. Pramote saw no evidence that Jeff was suicidal. If he had been, Dr. Pramote would have sent Jeff to the emergency room immediately.

Since Jeff's suicide, Dr. Pramote has received several suicide-related warnings or precautions on Effexor. In August 2003 and in June 2004, he received "Dear Doctor" letters from Wyeth warning of the risk of suicide in adolescents and adults. He also reviewed the "black-box" suicide warning placed on the drug after January 2005. The parties dispute the nature of the warnings Dr. Pramote has given to patients since Jeff's suicide. It is unclear from the record whether he has continued to prescribe Effexor to first-time users since Jeff's death.

### III.     Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th

Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

**III.    Analysis**

    **A.    Failure to Warn**

Wyeth contends that it is entitled to summary judgment on Giles's failure to warn claim because Dr. Pramote's actions and deposition testimony show that he would not have changed his conduct if he had received a warning from Wyeth before prescribing Effexor to Jeff. In response, Giles argues that Wyeth's failure to provide an adequate warning entitles her to a presumption that Pramote would have heeded the warning – in essence, a presumption of causation. Alternatively, Giles maintains that Dr. Pramote's testimony demonstrates that he would have heeded a warning if he had received one. For reasons that will become clear after a thorough analysis of the law, granting Wyeth summary judgment based on its counterfactual is troublesome.

To state a failure to warn claim against a pharmaceutical manufacturer under Illinois law, a plaintiff must establish that the defendant had a duty to warn (i.e., that defendant's drug caused the injury in question), that the defendant knew or should have known that the drug could cause the plaintiff's injury, that the failure to provide the necessary information made the warning

inadequate, that the drug was "'defective' and that this defect was the proximate cause of plaintiff's injuries." *N. Trust Co. v. Upjohn Co.*, 572 N.E.2d 1030, 1037 (Ill. App. Ct. 1st Dist. 1991); *Erickson v. Baxter Healthcare, Inc.,* 151 F.Supp.2d 952, 962 (N.D. Ill. 2001).  In the case of prescription pharmaceuticals, the manufacturer's duty to warn is to the physician, not to the consumer of the medication; the physician, in turn, has the duty to warn his patient.  *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392 (Ill. 1987); *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 42 (Ill. 2002); *Erickson,* 151 F.Supp.2d at 962.  This is called the learned intermediary doctrine.

Some states apply a "heeding presumption" in learned intermediary cases.  In these states, a court "presumes that warnings, if given, will be heeded and followed and that medical practitioners will act competently."  *Mahr v. G. D. Searle & Co.*, 390 N.E.2d 1214, 1233  (Ill. App. Ct. 1st Dist. 1979) (applying Texas law); *Lambert v. B.P. Prods. N. Am., Inc.*, No. 04-347, 2006 WL 924988, *5 (S.D. Ill. Apr. 6, 2006) (applying Arizona law); *Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991).

While *Mahr v. G.D. Searle & Co.*, cited above, was an Illinois case where the court applied Texas law,  390 N.E.2d at 1233, at least one judge in the Northern District of Illinois has found that the heeding presumption applies in Illinois, citing *Mahr*.  *Erickson*, 151 F.Supp.2d at 970.  As the Court will discuss below, the holdings of the Supreme Court of Illinois are consistent with *Erickson* in this regard.

Whether the heeding presumption applies or not is not the real dispute in this case.  What the parties really dispute is the heeding presumption's effect on the elements of the failure to warn cause of action.  The briefs essentially pose a choice between the position adopted in *Mahr*, that is, "What the doctor might or might not have done had he been adequately warned is not an

element plaintiff must prove as a part of her case," 390 N.E.2d at 1233 (applying Colorado law); *Erickson*, 151 F.Supp.2d at 970, and the position taken by the Tenth Circuit Court of Appeals and the Northern District of Illinois (among others), that a plaintiff must "establish proximate causation by showing that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1018 (10th Cir. 2001) (citing *Mazur v. Merck & Co.*, 742 F.Supp. 239, 262 (E.D. Pa. 1990) *and Thomas*, 949 F.2d at 812); *Garside*, 976 F.2d at 80; *Willett*, 929 F.2d at 1099 (holding that the defendant was entitled to summary judgment because the plaintiff failed to produce specific evidence demonstrating that her doctor would have changed his behavior had he been aware of slight increase in the risk of a certain side effect); *see also Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 370 (N.D. Ill. 1998) (finding that plaintiff had to show that his physician would not have prescribed defendant's drug if the warning had been adequate).

The Supreme Court of Illinois has not spoken on this issue clearly. It has, however, held that when a drug company fails to warn doctors sufficiently, doctors "cannot be considered 'learned intermediaries' and the adequacy of warnings is a question of fact, not law, for the jury to determine." *Hansen*, 764 N.E.2d at 43 (citing *Proctor v. Davis*, 682 N.E.2d 1203, 1213 (Ill. App. Ct. 1st Dist. 1997)); *Tongate v. Wyeth Labs.*, 580 N.E.2d 1220, 1228 (Ill. App. Ct. 1st Dist. 1991) (finding that where doctor is not sufficiently warned, "he would not be a learned intermediary")[2]; *see also Batteast v. Wyeth Labs., Inc.*, 560 N.E.2d 315, 323 (Ill. 1990).[3] The

---

[2] Wyeth cites *Tongate* for the proposition that the heeding presumption is rebuttable. 580 N.E.2d at1230. All *Tongate* said, however, was that, "[i]n two jurisdictions it has been held that a rebuttable presumption exists that a failure to warn was a proximate cause of the injury." *Id*. This was arguably dicta because the court did

trier of fact must judge a warning by whether it sufficiently apprised physicians of the risks associated with the use of the drug. *Upjohn Co.*, 572 N.E.2d at 1037; *see also McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006).[4] The absence of an adequate warning makes a qualifying prescription drug unreasonably dangerous. *Kirk*, 513 N.E.2d at 392.

The following excerpt from a products liability treatise illustrates the essence of the problem here in a useful way – albeit in a different context – thus:

> The negligence of a physician in prescribing or in not discontinuing the use of contraceptives usually does not constitute an intervening cause that otherwise relieves a pharmaceutical company of liability for its failure to furnish adequate warnings of possible adverse side effects, where the manufacturer's prior negligence is still operating and thus contributes to the plaintiff's injury. In order to demonstrate proximate causation, the plaintiff is not required to prove what the doctor might or might not have done had an adequate warning been given, because it is presumed that, had an adequate warning been provided, it would have been heeded.
>
> However, where the prescribing physician admits having had independent knowledge of the inherent risks in the use of the contraceptive during the time that the plaintiff was using it, but that he or she would nonetheless have

---

not need to rely on the presumption to grant relief; it found the point disputed.

[3] In failure to warn cases, courts regularly grant summary judgment when "the physician's testimony shows unequivocally that s/he knew at the relevant time *all* the information which would have been included in a proper warning." *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 82 (1st Cir. 1992) (collecting cases); *see also Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 811-14 (5th Cir. 1992); *Plummer v. Lederle Labs.*, 819 F.2d 349, 358 (2d Cir. 1987); *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 645 (4th Cir.1981); *Windham v. Wyeth Labs., Inc.*, 786 F.Supp. 607, 612 (S.D. Miss. 1992). The Eighth Circuit recently held similarly, finding that a manufacturer's failure to warn is not the proximate cause of an injury where "the prescribing physician had independent knowledge of the risk that the adequate warning should have communicated." *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004) (quoting *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir. 1995)); *In re Prempro Prods. Liab. Litig.*, No.03-CV-1507, 2006 WL 1981902, *2 (E.D. Ark. July 13, 2006).

[4] What a drug manufacturer knew or should have known is a question of fact, which a plaintiff must establish by expert testimony. *Erickson*, 151 F.Supp.2d at 963.

>prescribed the contraceptive on account of the apparent remoteness of the risk for the particular plaintiff, the manufacturer's failure to warn is not a proximate cause of the injury.

Am. L. Prod. Liab. 3d § 90:19 (footnotes omitted). For purposes of this case, if the Court accepts the above, Dr. Pramote's failure to warn was not an intervening cause relieving Wyeth of liability – assuming, of course, the inadequacy of its warnings. Because Wyeth did not warn of the risk, the learned intermediary doctrine never applied and thus never insulated its negligent conduct – in other words, Wyeth's "prior negligence [was] still operating and thus contribute[d] to [Jeff's] injury." *See id.*; *see also Brochu v. Ortho Pharm. Corp.*, 642 F.2d 652, 660 (1st Cir. 1981) ("A physician's carelessness, even if it takes an unanticipated form, should not relieve a drug manufacturer of liability if the manufacturer's failure to warn adequately may have contributed to that carelessness."); *Wooderson v. Ortho Pharm. Corp.*, 681 P.2d 1038, 1057-58 (Kan. 1984) ("Where warnings are inadequate, however, the presumption is in essence a presumption of causation."); *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 839 (Ohio 1981) ("[O]nly speculation can support the assumption that an adequate warning, properly communicated, would not have influenced the course of conduct adopted by a physician, even where the physician had previously received the information contained therein."); *Hamilton v. Hardy*, 549 P.2d 1099, 1109 (Colo. Ct. App. 1976) *overruled on other grounds by State Bd. of Med. Examiners v. McCrosky*, 880- P.2d 1188 (Colo. 1994); *Vucinich v. Ross*, 893 So.2d 690, 695 (Fla. Dist. Ct. App. 5th 2005) ("[A] defendant cannot claim the defendant's failure to warn had no effect on the outcome when, if the defendant had made the proper warning, we would know for sure whether the outcome would have been affected."); *Ortho Pharm. Corp. v. Chapman*, 388 N.E.2d 541, 555-57 (Ind. Ct. App. 1st Dist. 1979).

This line of cases appears to be consistent with the Supreme Court of Illinois's decision

in *Hansen*. Though courts in other states have held differently, in Illinois, doctors who receive insufficient warnings "cannot be considered 'learned intermediaries.'" *Hansen*, 764 N.E.2d at 43. The logical extension of this holding is that the learned intermediary doctrine does not apply, and therefore does not insulate the manufacturer's negligent conduct. *See Brochu*, 642 F.2d at 660; *Wooderson*, 681 P.2d at 1057-58; *Seley*, 423 N.E.2d at 839; *Hamilton*, 549 P.2d at 1109; *Vucinich*, 893 So.2d at 695; *Chapman*, 388 N.E.2d at 555-57.

Perhaps the most well-reasoned case offered by Wyeth in support of a different view of the nature of this cause of action is *Thompson v. Hoffman-LaRoche, Inc.*, 949 F.2d 806 (5th Cir. 1992). In that case, the Fifth Circuit, applying Mississippi law, held that to satisfy his burden on causation, a plaintiff must "introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded." *Id*. at 812 (footnotes omitted). Distinguishing between what it characterized as "an unavoidable risk warning" and "a preventable risk warning," the court determined that in the former – the type at issue here – a court only presumes the doctor would have incorporated "the additional risk into his decisional calculus." *Id*. at 813 (internal quotation marks omitted). In its view, again under Mississippi law, the plaintiff must go further and "demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Id*.

It is not clear from the opinion whether Mississippi law is similar to Illinois regarding an insufficiently warned doctor's status as a learned intermediary. Thus, it is not clear whether the court's decision rested on an application of a subspecies of learned intermediary jurisprudence or on principles of causation generally. Because it is surely foreseeable that a doctor would fail to recognize a particular risk or fail to warn for some other reason, it appears the court felt it was

dealing with the learned intermediary doctrine.[5]

Wyeth grudgingly admits the existence of a presumption of causation, but, under standard Illinois law on presumptions, believes it rebuttable. *Diederich v. Walters*, 357 N.E.2d 1128, 1131 (Ill. 1976) ("[A] presumption ceases to operate in the face of contrary evidence."). Giles, on the other hand, relies on *Mahr* and does not believe she must prove what Dr. Pramote would have done had Wyeth warned him adequately. While the decisions of the Illinois Supreme Court seem to support *Mahr*, such a position would relieve a plaintiff of her burden of proving an important facet of causation whenever a manufacturer of prescription drugs fails to warn doctors adequately.[6]

---

[5] Whether an intervening cause relieves a defendant of its negligence "has been determined by asking whether the intervention of the later cause is a significant part of the risk involved in the defendant's conduct, or is so reasonably connected with it that responsibility should not be terminated." W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 44 at 302 (5th Ed. 1984) (Student Ed.). In other words, "the defendant is said to be liable if, but only if, the intervening cause is foreseeable." *Id*. "The courts are quite generally agreed that intervening causes which fall fairly in this category [i.e., foreseeable intervening causes] will not supercede the defendant's responsibility." *Id*. at 303-04; *see also Stevens v. Parke, Davis & Co.*, 507 P.2d 653, 663-64 (Cal. 1973) ("It is well settled that 'an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct.'"); *Taylor v. Wyeth Labs., Inc.*, 362 N.W.2d 293 (Mich. Ct. App. 1985) (same).

[6] Other courts have justified this result by noting the difficulty of offering proof of causation when the trier must engage in counterfactual reasoning. *See Lambert*, 2006 WL 924988, at *5 (noting that a presumption of causation is useful to plaintiffs in cases such as these, "as it might otherwise be difficult to demonstrate how an injured or deceased person would have reacted to a given warning."). Because the only party in these situations that has acted culpably is the manufacturer, and because the uncertainty arises directly from the manufacturer's tortious conduct, some courts have neglected to sympathize with the manufacturer's plight. *See Vucinich*, 893 So.2d at 695 ("A defendant cannot claim the defendant's failure to warn had no effect on the outcome when, if the defendant had made the proper warning, we would know for sure whether the outcome would have been affected."); *Seley*, 423 N.E.2d at 839. Indeed, the situation is not as bad as it could be because a manufacturer can still avoid liability by showing

Although the Court is inclined to accept the position espoused in *Mahr*, no clear resolution of the conflict detailed above presents itself.  For better or worse, the Court need not decide this issue because it finds that disputed issues of fact preclude summary judgment on Giles's failure to warn claim.

Dr. Pramote testified that he does not remember exactly what he told Jeff when he prescribed him Effexor.  To begin, given that Giles is the non-moving party, the Court must presume that Dr. Pramote did not tell Jeff to call him if he experienced negative side effects.[7]  Furthermore, at his deposition, Dr. Pramote testified that he pays special attention to the "black box" warnings provided by drug manufacturers and that he follows "Dear Doctor" letters. (Pramote Dep. at 119, 124.)  When he received the 2003 Dear Doctor letter, "it cause a major pause in the way we thinking about every patient that we take. . . . And, absolutely it – it – creating a question mark, you know, as to what you want to do next." (*Id*. at 124-25).   In general, he said, he changes his practice in accordance with "Dear Doctor" letters. (*Id*. at 126). If, before Jeff's suicide, Wyeth had warned him that Effexor could trigger conditions which might lead to suicide, he said it would have been "very difficult . . . to . . . prescribe the drugs." (*Id*. at 127).  If he chose to prescribe it anyway, he would have told the patient of the risk of suicide.  (*Id*. at 127).

The rest of Dr. Pramote's testimony regarding his post-warning conduct is not clear.

---

that its warnings were adequate or that the physician knew all the information which would have been included in the proper warning.  *Garside*, 976 F.2d at 82; *Thomas*, 949 F.2d 806, 811-14; *Plummer*, 819 F.2d at 358.

[7] Though it is not clear – given Dr. Pramote's somewhat broken English and the flow of the conversation – it appears Dr. Pramote testified that he did not tell Jeff to give him a call if he had problems.  (*Id*. at 31).

When he was asked, "Subsequent to Jeff Giles' death, did you take any of those patients off of Effexor because of his death?" (Pramote Dep. at 70), he responded, "Yeah. That very good question to ask. You know, I still have patient on Effexor even nowadays." (*Id*.). He continued, "Yes. I may have taken some patient off from, you know, variety of reason, okay. For example, doesn't work, side effects. But patient that I have on, I still have a few patient on it." (*Id*. at 70). When asked whether he has given any patients to whom he prescribed Effexor a warning that it can cause them to become suicidal, he responded, "You know, I – I don't, you know – I would stand by my – by my testimony earlier, okay? The things that I tell the patient, you know, it takes a while before it works, you have side effects, restlessness, you get worse, please call me." (*Id*. at 136). According to Dr. Pramote, the patients he has had since Jeff have been on the drug a long time, so he does not consider them a suicide risk. (*Id*. at 140).

Clearly, his testimony is sufficient to create a jury question as to whether he would have changed his conduct in light of the warning. Even if he testified absolutely that he would not have changed his conduct, there is authority for the proposition that the issue is still a jury question. *In re Prempro Prods. Liab. Litig.*, 2006 WL 1981902 at *2-3 ("I'm inclined to hold with the idea that unless a physician's claim that she would have prescribed a drug even if adequately warned is self-disserving, the credibility of such a claim is generally a jury question not to be resolved on a motion for summary judgment."). In any event, Wyeth has failed to meet its burden of showing that its post-suicide warnings were adequate as a matter of law.

    **B.**    **Breach of Express Warranty Claim**

The Court need not expend great effort in finding that Giles's breach of express warranty claim fails. Giles bases this claim on statements made by a Wyeth representative when giving a Power Point presentation on Effexor, which Dr. Pramote attended. According to Giles, Wyeth

"represented that, not only was Effexor 'safe,' but also, that it was particularly efficacious in *reducing* the risk of suicide." (Doc. 95 at 16). On this basis alone, Giles asks the Court to deny Wyeth's motion on this claim.

Sellers of goods create express warranties in several ways. 810 ILCS 5/2-313 speaks to this issue and provides as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

After reviewing the portions of the Power Point presentation submitted by Giles, the Court finds that she has presented no evidence of an express warranty. The Court's reading showed no warranty of "safety" or that Effexor is " particularly efficacious in *reducing* the risk of suicide." Even if Wyeth's presenter made statements to this effect, it appears very likely they constituted puffing, rather than warranties. *See, e.g., Adolphson v. Gardner-Denver Co.*, 553 N.E.2d 793, 798 (Ill. App. 3d Dist. 1990); *Redmac, Inc. v. Computerland of Peoria*, 489 N.E.2d 380, 382 (Ill. App. Ct. 3d Dist. 1986). Even if these statements appeared in the language of the Power Point slides, which they do not, it is difficult to conceive how either would be a "positive assertion of a matter of fact by seller at the time of the sale for the purpose of assuring the buyer of said fact and thereby inducing him to make the purchase." *Coryell v. Lombard Lincoln-Mercury Merkur, Inc.*, 544 N.E.2d 1154, 1159 (Ill. App. Ct. 2d Dist. 1989).

One slide says that "approximately 1/3 more achieved remission with [Effexor] vs SSRIs.

(Doc. 95 Ex. G at 3). Giles has offered no evidence that any court has found an express warranty under similar circumstances. She has similarly failed to come forward with any evidence that the breach of the alleged warranties proximately caused Jeff's suicide. *See* 810 ILCS 5/2-715.

## V.     Remaining Motions

Also pending are Giles's motion for partial summary judgment on preemption defense (Doc. 79), Wyeth's cross-motion for summary judgment based on federal preemption (Doc. 84), Giles's amended motion to exclude certain testimony from defense experts Schatzberg and Peck and Wyeth's in-house experts (Doc. 98), and Giles's motion to strike Wyeth's reply to its response to Wyeth's cross-motion for summary judgment (Doc. 109). At the last hearing in this case, the Court orally denied the parties' cross-motions for summary judgment based on federal preemption (Docs. 79, 84). As such, Giles's motion to strike (Doc. 109) is moot. The Court extensively reviewed some of the *Daubert* issues in this case in its last Order (Doc. 147). The Court has reviewed the parties' briefing on Giles's motion to exclude the testimony of Wyeth's experts (Doc. 98) in light of the discussion in that Order. After careful consideration, the Court will deny this motion.

## VI.    Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Wyeth's partial motion for summary judgment (Doc. 86). The Court **DENIES** its motion with respect to Giles's failure to warn claim and **GRANTS** the motion with respect to Giles's breach of express warranty claim. The Court denies Giles's motion to strike (Doc. 109) as **MOOT**.  It also **DENIES** Giles's *Daubert* motion (Doc. 98).  The Court **ORDERS** the Clerk of Court to enter judgment accordingly at the close of this case. The Court **FURTHER ORDERS** the Clerk of Court to reflect the fact that the Court orally denied the parties' cross-motions for summary judgment

based on federal preemption (Docs. 79, 84).

    **IT IS SO ORDERED.**

    **DATED: June 20, 2007**

                                                           s/ J. Phil Gilbert
                                                          **J. PHIL GILBERT**
                                                          **DISTRICT JUDGE**